Good morning. May it please the Court, Christopher Rehnke on behalf of Appellant Mario DeSalvo. There are two issues in this particular matter before the case, before the Court today. One, the first, is whether or not the fee agreement entered into between Ed Gray and Mr. DeSalvo can be turned, can be deemed a classic retainer or as an advanced fee deposit. The second issue, which will be addressed briefly, is in regards to whether or not the Court abuses discretion in cutting Mr. DeSalvo's hours and his hourly rate. Counsel, on the first point, just for the purposes of argument, let's for the moment say it was a retainer agreement. But this fellow had to withdraw because of a conflict of interest. Under those circumstances, wouldn't he have to give the money back? He's no longer retained, and it's because of his own action. Unfortunately, I think two things. First, I'm not sure the Court addressed that particular issue adequately. They made a one, I believe, a one-sentence statement in regards to their confusion over what actually occurred during that particular time period. Are there any dispute that he withdrew because of conflict of interest? I would submit to the Court that that presupposes the fee agreement and the retainer was, in fact, an advanced fee deposit. Had it not been, had it been a classic ---- I don't think that was the question. I thought Judge Fletcher said assume it was a retainer agreement. Well, assume for hypothetical purposes, of course. And then I would submit to the Court that then the retainer agreement would have to first be an advanced fee deposit. So under that hypothetical, I would concede that, Your Honor, that they would probably have to. In the least. Sure. Assume it is a retainer agreement. And let's not reclassify as something else because we're assuming it's a retainer agreement. Would he have to return the money if he couldn't perform the work? If it was deemed a classic retainer, I would submit that, yes, he would have. I would submit, I'm sorry, if it was an advanced fee deposit, I would. No. I don't want you to say the words advanced fee deposit. Okay? Okay. I want you to give me an answer without using that phrase. Assume it's a classic retainer. Okay? Don't classify it as something else. Don't use the forbidden phrase. Okay? Now give me an answer to that question. Assuming it is a classic retainer and it turns out he can't perform the work for which he was retained, does he have to return the money? On that hypothetical and on that basis, I would submit no. He wouldn't have to return it. Why is that? Well, Mr. DeSalvo would submit to this Court that it's the purpose and the nature of the fee agreement that controls how you determine what kind of fee agreement it is regardless of the language. But this ---- Go ahead. Counsel, let's say that he finds out that he gets the retainer agreement, gets the money. The next day, he finds out that there's conflict of interest and he withdraws. And you say he can keep the money? It depends on, again, Your Honor, what the ---- Oh, yes or no, can he keep the money? As a matter of ethical behavior, can he keep the money? I would say certainly it doesn't seem like you could. Thank you. I would concede that. And that's where the Court's going. Well, doesn't it seem to be also as a matter of contract law? I mean, the point of a retainer is to keep yourself available to do work on the case. If it turns out the next day you do something that makes you unavailable in the case, then you haven't kept yourself open. I mean, you do something to create a conflict, then you haven't kept yourself available, right? So the thing you've been paid for hasn't ---- you know, you haven't performed. So it seems to me, aside from the ethical question, which you ---- the answer you gave to Judge Fischer, there's also a contract question in that you haven't performed the thing you've been paid for. Well, and I believe that's the very reason why we're here today. Mr. Salvo would submit to the Court, again, it's the intent of the parties that are controlling in this particular fashion. The SEC cites to the practice guide, who indicates that the language in the fee agreement isn't necessarily controlling. And in addition to ---- I'm a little persuaded about the intent of the parties. If the guy who paid the money would actually be getting it back, you know, if he sort of testified, no, it was never meant to come back to me, if he's not going to get it back anyway, you know, I'm a little skeptical of what he says. And I can certainly see whether just the Court would have been skeptical. Sure. And I concede that. But, again, Mr. Salvo and Mr. Gray acted in accordance with the specific terms of the fee agreement from the very beginning. And I guess, you know, you're talking about three or four months that probably had passed by, during which certain things had occurred. And I think if you look at the length of time, it's not the same as the next day, you know, just finding out there was a conflict of interest. I've never heard of a retainer agreement where you pay up front for unlimited services that the lawyer is going to perform on a particular matter. I've heard of retainer agreements where you pay a retainer and the lawyer then holds himself available, charging at his hourly rate, or maybe at a reduced rate if you have a retainer, you know, or something, but then charges for the work and the retainer is there to make sure that the lawyer is there to do the work at the normal rate. But I've never heard of this sort of prepaid by, and I don't think this the Court had either, paid by the job. It's certainly unconventional. I've heard of. I think it's the more accurate description. I think in today's society, the recent development of the fixed fee agreement is certainly maybe perhaps akin to something of this, no, not to the extreme of this particular matter. Again, I focus the Court on. But which fixed fee agreement are you talking about? You said the fixed fee agreement. Is that something that? Well, it's somewhat similar where particular lawyers or law firms would turn to a client and say, I will handle this particular matter up to a certain point for X amount of dollars, for instance, just to throw out an example on lawful detainer actions. I know firms that turn around and tell the client, I will charge you $1,200 for an unlawful detainer action unless and until we decide that we are going to go to trial. At that point, then, we will charge you per hour. Of course, that was included in the fee agreement and outlined very specifically, which is a little different than what happened here. What I'm focusing on is the purpose and the control and the treatment of the fee agreement was never changed for three or four months. Both Ed Gray and DeSalvo acted in accordance with the specific terms. Specific terms may not have included everything that the practice guide indicates it should. Certainly, there are issues in regards to. You want to speak about the cutting down of the hours? Speak about the cutting down of hours because it doesn't appear from the record. The court provides some explanation, but the problem is the court had little to work with. You gave us something we should take judicial notice of, that an average law school course lasts four months at an average of three hours per week, and you say we should take judicial notice of that? Unfortunately, Mr. DeSalvo would submit to you, and if that's in fact what is requested, unfortunately, I can't address that issue. Well, in any event, it says we should take judicial notice and calculates that as usually about 150 hours for one semester. Yet, my math says that four months, which is 16 weeks, times three hours per week comes out 48. So if we take judicial notice, it sounds like you're out of luck. I would concede that. I think that the importance of the particular section dealing with the slashing of the hourly fees is that, on one hand, the court, without substantial evidence, slashes DeSalvo's hourly rate substantially, which is fine. But then, on the other hand, the court then turns around and slashes substantially the number of hours treating Mr. DeSalvo as an expert. Well, counsel, I have considerable doubt that a lawyer should be charging for his self-education. He shouldn't take a case in which he has no experience, and here he said he was also disabled. So it sounds as though a very low hourly rate at best should be involved, and he's put himself at the mercy of the court because he didn't keep any time records. So you might look at what the number of hours a competent, informed lawyer would spend on a matter, and I can't see that there's any abuse of discretion here in what the judge did. Unfortunately, the court didn't provide any explanation other than arriving at certain conclusions, and that's the problem I think DeSalvo has and has brought before this court. The reason why I indicated earlier that the court didn't have much to go on is because the SEC came up with a $45 an hour rate, and I'm unaware of any paralegals who get paid $45 an hour. So the problem is we're at a disparity. The court didn't go with 45 hours. I'm sorry, Your Honor. The court didn't go with 45 hours. It didn't go with 45 hours, but I guess DeSalvo would submit that the problem is the SEC couldn't come up with anything better to assist the court, so the court's kind of in this vacuum with DeSalvo on one side and the SEC on the other side, and there's such a disparity between the hourly rates, the court had to fashion something. But I think we also have the district court's experience in assessing hourly rates and fees and so on. I would presume the district court isn't entirely in a vacuum. Well, I would certainly, and I would concede that.  Thank you. Thank you, Your Honor. May it please the Court, my name is Catherine Broderick, and I represent the Securities and Exchange Commission in this matter. DeSalvo is not entitled to ---- Do you think there's anything you've heard today that wasn't adequately covered in your brief? Anything you've heard today that was not adequately covered in your brief? No, but I would like to draw the court's attention to ---- I guess the answer is yes. Oh, yes. It's not covered. No. Okay. No? No. Okay. Well, thank you. Thank you. The case is argued. We stand submitted.
judges: B. Fletcher, Kozinski, Fisher